No. 29,094.

In re Application of TADE McCLANE for Writ of Habeas Corpus.

(284 Pac. 365.)

Opinion filed February 8, 1930.

F. J. Oyler and G. R. Gard, both of Iola, for the petitioner.

William A. Smith, attorney-general, and Walter T. Griffin, assistant attorney-general, for the respondent.

The opinion of the court was delivered by

HUTCHISON, J.: The petitioner in this case applies to this court for a writ of habeas corpus, claiming to be illegally restrained of his liberty by the superintendent of the industrial reformatory at Hutchinson, Kan., where he has been committed to serve a sentence for the conviction in Neosho county of the crime of an attempt to com-

mit rape. Three grounds are urged by the petitioner in support of his right to complete discharge: First, the information charged the offense of assault with intent to commit rape as well as simple assault, for which the punishment would be a jail sentence; second, the petitioner has already served the full jail sentence of six months in the county jail of Neosho county; and third, the commitment to the industrial reformatory is void and of no effect.

The information is set out in the abstract, and instead of it containing any words or terms indicating an assault, the details set out quite conclusively show the lack of anything that could be likened to an assault. Before an assault can be said to be included in the crime of an attempt to commit rape, the information must contain a charge of that kind or character. The information in this case not only fails to charge an assault, but the very nature of the offense under our statutes negatives its existence. It was said in the case of *State v. Russell*, 64 Kan. 798, 68 Pac. 615, in distinguishing between an attempt to commit rape on a female under the age of eighteen years and an assault with intent to commit the crime of rape, that the element of force in each case was by virtue of the statute eliminated. Force or assault of any kind is not an element of the crime of an attempt to commit statutory rape. These offenses involve separate and distinct elements and therefore require separate and distinct allegations. (*State v. Custer*, 85 Kan. 445, 116 Pac. 507; *State v. Guthridge*, 88 Kan. 846, 129 Pac. 1143; *In re Stahlnaker*, 93 Kan. 622, 144 Pac. 832.)

As second and third grounds for the writ it is claimed the petitioner has already served his jail sentence of six months, appropriate for assault with intent to commit rape, and the commitment to the reformatory thereafter is void and of no effect. The confusion in the record which furnishes the petitioner the ground for his contention occurs after the petitioner had been regularly tried and found guilty of an attempt to commit rape on a female under eighteen years of age, had been regularly sentenced to the industrial reformatory and on his own request had been granted a parole by the district court in which he was convicted and sentenced. One of the conditions or restrictions imposed in the parole was that he serve six months in the jail of Neosho county, and among the other conditions was that after the termination of the jail sentence he support his wife and child. The confinement in jail was unusual as a con-

dition or restriction, and yet the parole was granted upon his own request and he had the liberty to accept or reject it as he would any parole. The restraint of liberty is not the objectionable feature of it, but the element of apparent punishment by such confinement. In the recent case of *Gray v. Graham,* 128 Kan. 434, 278 Pac. 14, it was held—

"In granting a parole under R. S. 62-2202 the trial court is authorized to make reasonable conditions and restrictions, the nature of which must depend largely on the circumstances of the particular case. In this case it is held that the conditions were not unreasonable.

"Ordinarily when one accepts the terms of a parole he is deemed to have agreed to the conditions named therein." (Syl.)

In that case the prisoner was on his own request paroled by the court from a jail sentence on account of the serious condition of his health, and placed in a hospital, from which he was not permitted to depart without the consent of the hospital patron or the court. His later claim of credit for this hospital confinement on his jail sentence was not allowed as above stated, because the restrictions imposed were reasonable and he had a right to reject the parole.

We do not wish to go so far in this case as to approve the confinement in jail as a condition and restriction of parole, although R. S. 62-2202 gives wide latitude and discretion to the trial court in such matters when it states "upon such conditions and under such restrictions as the court or judge granting the parole shall see fit to impose." The proposition now before us is very different from a complaint of such confinement in jail when such confinement existed. It has fully terminated and no complaint is being made of serious character of the condition imposed, but it is now presented as a terminated sentence. After being released from jail the petitioner failed to provide for his wife and child as required in the order of parole, and the court on that account revoked the parole and committed the petitioner to the reformatory. The revocation of the parole and the recommitment are, to say the least, irregular. First, the revocation of parole in reciting the conviction, sentence and order of parole, refers to the sentence of confinement having been changed from the reformatory to the county jail. The fact that the entry refers to it as a change or one "instead" of the other, does not make the jail confinement a sentence instead of the reformatory sentence. As stated above, the original sentence to the re-

formatory is regular and so is the order of parole, aside from the unusual condition of jail confinement. It is a valid parole and nothing more. It nowhere therein attempted to change the original sentence. The order of parole must speak for itself. After the revocation of the parole, and long after the expiration of the term at which the petitioner was convicted, the court apparently rendered a new judgment and new sentence and commitment to the reformatory, substantially the same as had been done originally ten months earlier. There was no occasion for a new judgment or sentence. The original had not been set aside. The commitment thereunder had simply been deferred as in all cases where the defendants have been paroled. All that was needed was a revocation of the parole and a certified copy of the original judgment and commitment.

"The parole granted under this provision is not the vacation of the sentence imposed, nor is it a commutation of the punishment. It suspends the execution of the penalty and temporarily releases the convict from imprisonment upon conditions which he is at liberty to accept or reject. A parole is granted by the court at its discretion and upon the theory that punishment is not the sole purpose of a prosecution and conviction, but that the reform and improvement of a prisoner is a matter of great importance." (*In re Patterson,* 94 Kan. 439, 442, 146 Pac. 1009.)

Cases are cited by petitioner to the effect that the court loses jurisdiction where sentence is suspended beyond the term, but the new sentence in this case should never have been given, because the original was still in effect. The attempted resentence and the mistaken form of revocation of parole do not set aside or dispose of the original sentence, which should still be the basis and authority for his confinement in the reformatory, accompanied with an order revoking the parole.

The writ is denied.